**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**DEANDRE DAVIS (# L5309)**                                    **PETITIONER**

**v.**                                                                          **No. 2:05CV194-P-A**

**STATE OF MISSISSIPPI, ET AL.**                                    **RESPONDENTS**

## **MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of DeAndre Davis for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered the petition, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be dismissed with prejudice.

### **Facts and Procedural Posture**

The petitioner Davis was convicted April 9, 2003, of murder (Count One), armed robbery (Count Two), and arson (Count Three) in the Circuit Court of Tunica County, Mississippi. He is in the custody the Mississippi Department of Corrections and is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. S.C.R., Vol. 1, pp. 105-110. That same day, he was sentenced to life in Counts One and Two – and three years in Count Three, all to be served consecutively in the custody of the Mississippi Department of Corrections. *Id.*

The petitioner appealed his convictions and sentences to the Mississippi Court of Appeals, citing as error (as stated by the petitioner through counsel):

    A. Admission of the opinion of unqualified witness error.

    B. Court erred in limiting defense cross examination of two of State's witnesses.

    C. Prosecutorial misconduct.

    D. Error in admitting picture of deceased.

After considering these arguments, the court of appeals affirmed. *Davis v. State*, 904 So. 2d 1212 (Miss. App. 2004), *cert. denied* April 21, 2005 (Cause No. 2003-KA-00989-COA).

Davis filed the instant petition on September 19, 2005, setting forth the following three grounds for relief (reproduced verbatim as stated by the petitioner):

**Ground One:** The court err in allowing the D.A. to make a personal plea to the jury in closing arguments.

**Ground Two:** The court err in unfairly limit the Defendant cross-examination of Braggs and Thompson.

**Ground Three:** The court err in allowing pre-death photograph of Victim into evidence.

## Summary of the Evidence Against the Petitioner

The evidence against the petitioner was overwhelming, and his own testimony completely eroded his credibility. In the evening of December 23, 2001, LaShelle Braggs rode in the front passenger seat while the victim, Kevin Knowlton was driving his BMW down a road off Highway 49 in Tunica County, Mississippi. The petitioner, DeAndre Davis, rode in the right rear seat of the two-door vehicle. As the three sped down the road, Davis took out a 9 mm pistol and shot Knowlton through the head, showering Braggs with blood and bits of flesh. He then ordered Braggs to grab the steering wheel and ram the gear shift into park. As Braggs attempted to comply, the BMW careened off the road into an empty field, coming to a stop 266 feet after leaving the pavement. The engine was still racing. DeAndre Davis climbed over the seat back into the front seat, exited the vehicle on the driver's side and pulled Knowlton out of the car. He put the 9 mm pistol away in his jacket – then pulled Knowlton's wallet from his pants and retrieved something from it. He ordered Braggs to follow him, and several hundred feet from the car, he discarded Knowlton's wallet.

He led Braggs for three hours through fields, forests, and at least two rivers in the chill December night. At last, they reached the home of Larry Furge. Furge noticed that Bragg was soaking wet and shaking – and that Davis was wet and muddy. Davis told Furge that he and Braggs had car trouble and requested a ride to the Isle of Capri Casino in Tunica, Mississippi. Furge and his brother-in-law Glenn Beall (both of whom were visiting family for Christmas) instead gave Davis and Braggs a ride to Braggs' house in West Helena, Arkansas – just over the Mississippi River Bridge at Tunica.

Davis told Braggs not to worry and not to tell anyone what happened. Then he went to his house, still wet and muddy. When Davis had left home earlier in the day, he had twenties in his wallet, but when he returned, he placed numerous wet hundred-dollar bills on the dresser to dry. His fiancé, Lornzetta Pryor, saw him arrive, leave for about ten minutes, then come back. After about thirty minutes, he left again with a Best Apple Juice jug containing water. He asked Pryor whether the people at the filling station would let him put gasoline in the plastic jug. She did not know. He left in his white car and returned in about thirty minutes – without the Best Apple Juice jug. He told Pryor that someone had tried to rob him and he had to shoot the robber. A day later Davis and his fiancé went to a hotel for a romantic getaway, and during that time the police came to question them about the death of Knowlton. After the police left, Davis apologized to Lornzetta Pryor – and told her that he had killed Knowlton. According to Davis, Knowlton had suggested a ménage à trois among Knowlton, Davis, and Pryor – and the suggestion enrages Davis to the point that he shot Knowlton in the head.

Investigators found the burned-out hull of the BMW in the field with a charred human body inside – its scorched legs hanging out of the driver's door. The license plate was not on the vehicle, and the severe burned condition of the corpse made it unidentifiable. Investigators

found an intact vehicle identification number on the car and were then able to determine the identity of the body as that of Kevin Knowlton by tracing the records of the BMW's ownership. They also recovered a Best Apple Juice bottle near the vehicle. The inside of the bottle smelled of gasoline.

The investigation led police to DeAndre Davis and LaShelle Braggs. After interviewing Braggs several times, investigators recovered Knowlton's wallet several hundred feet from the vehicle's location. They took impressions of several shoe prints found at the scene. Those impressions were consistent with the tread pattern on the shoes DeAndre Davis wore during an interview with police. Later on, Davis asked Stephanie Welton, an acquaintance of his from West Helena, if she thought that burning a body would make it difficult for forensic scientists to determine what type of bullet put a hole in someone's head. Welton said that she did not know, and Davis replied, "Well, I heard forensics can't tell – if you burn a body up, what size – what gun put that hole." A day or so after the police questioned him, DeAndre Davis left his home in Arkansas and fled to Indiana, where he stayed with a relative. He was located there, arrested, and returned to Mississippi, where he gave a recorded statement to investigators.

Against the advice of his counsel, and after the court discussed with him his right to testify or not, DeAndre Davis testified on his own behalf. His testimony was devastating to his defense. He testified that every witness who had given evidence against him was lying. He denied even crossing the Mississippi River and entering Mississippi on December 23, 2001. Unfortunately for Davis, he had given a statement to the police in which he admitted crossing the river from Arkansas into Mississippi. He denied giving the statement. In rebuttal, the state introduced the audio recording of the interview – on which the jury could hear Davis' voice – and on which Davis admitted crossing the river. In addition, Davis testified that he needed to

carry a pistol because he ruled the streets of West Helena, Arkansas, and thus would need such protection:

> A [DeAndre Davis]: . . . I said I done had several pistols.
>
> Q [Prosecutor]: Okay. So you had several pistols?
>
> A: Yeah.
>
> Q: For your own protection?
>
> A: For my own protection.
>
> Q: Um-hum. And when have you had to protect yourself?
>
> A: Man, look, I'm in the streets, man. I'm in the streets. I run the streets. That's where I dwell.

(S.C.R. Vol. 3, p. 300).

### Issues of State Law

The petitioner's allegations in Grounds Two and Three challenge the admissibility of evidence and, as such, are issues of state law. A claim challenging the state court's ruling on the admissibility of evidence under state law is precluded from review in federal court because a state prisoner is entitled to *habeas corpus* relief only if his custody is "in violation of the Constitution or laws or treaties of the United States." *Engle v. Isaac,* 456 U.S. 107, 118 (1981). "[I]n reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted). The "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson,* 194 F.3d at 656.

In Ground Two, the petitioner alleges that the trial court unfairly limited defense counsel's ability to cross-examine witnesses Lashelle Denise Braggs and Investigator Allan Thompson. Regarding Braggs, the petitioner argues that counsel was not allowed to elicit testimony of potential bias she may have had due to the deal she had made with the prosecution. Davis further argues that witness Thompson was allowed to testify as a DNA expert, although he was not qualified as such. Specifically, Davis complains of the following exchange:

> Q: Had you picked the rag up, would your DNA be there or would you expect it –
>
> **BY MR. SHACKLEFORD**: – I object to this. He said he's not an expert in DNA
>
> **BY MR. MELLEN**: – But, Your Honor, he was cross-examined on this.
>
> **BY THE COURT**: That is true. I'm going to allow him to go a bit further.
>
> Q: (By Mr. Mellen:) If you had handled it would you expect your DNA to be on there?
>
> A: Very unlikely.

S.C.R., Vol. 2, pg. 118.

The Mississippi Court of Appeals considered this argument on direct appeal and found it to be without merit:

> While cross-examining Thompson, defense counsel asked him repeatedly about his failure to have certain objects analyzed for DNA evidence. "Trial courts have the discretionary power to limit repetitive cross-examination so as to provide for the orderly presentation of evidence and the elimination of needless waste of time." *Pate v. State*, 838 So.2d 343, 345 (¶ 3) (Miss.Ct.App. 2002). Therefore, the trial court did not abuse its discretion in refusing to allow the defense to continue questioning Thompson.
>
> As for the cross-examination of Braggs, Davis complains that "[a]lthough Ms. Braggs was not indicted for capital murder, she was so initially charged. Her potential bias for the prosecution is so completely interwoven with this fact, that depriving the jury of this important information is unfairly prejudicial." Despite Davis's argument, the record reveals that the defense did elicit this information from Braggs before the State objected. Specifically, defense counsel asked, "You

> were charged with capital murder, weren't you?" Braggs answered, "Yes, I was," and she then went on to admit she had pled guilty to accessory after the fact. Therefore, the jury was not deprived of this information. Thus, this argument lacks merit.

*Davis v. State*, 904 So.2d at 1215-1216. The trial court's decision to sustain objections with respect to these witnesses does not rise to the level of a constitutional violation which would warrant *habeas corpus* review of this claim. Defense counsel was able to elicit sufficient testimony from these witnesses to bring the appropriate facts to the jury's attention. Further, in light of the overwhelming evidence of the petitioner's guilt – and his lack of credibility on the stand – further cross-examination of these witnesses would not have swayed the jury's decision.

In Ground Three, the petitioner argued that the trial court erred in admitting a photograph of the victim before he died. The petitioner argues that this photograph served no purpose other than to inflame the jury because the victim's identity was not in question. The parties did not, however, stipulate the identity of the victim. The Mississippi Court of Appeals considered this argument on direct appeal and found it to be without merit:

> Davis contends the photograph had no relevance to any issue in the case and was therefore offered only to arouse the emotions of the jury. The fact that a photograph of the deceased in a homicide case might arouse the emotions of jurors does not by itself render it inadmissible so long as introduction of the photograph serves some legitimate, evidentiary purpose. *Walker v. State*, 671 So.2d 581, 601 (Miss. 1995). It is within the sound discretion of the trial judge to determine whether or not the photograph has a legitimate, evidentiary purpose. *Id*. The pre-death photograph was shown to the victim's stepfather. The district attorney asked the stepfather whether the photograph clearly depicted the victim. Thus, the photograph served the legitimate, evidentiary purpose of identifying the victim. Therefore, the trial judge did not abuse his discretion by overruling the objection.

*Davis v. State*, 904 So.2d at 1216. Admission of the photograph simply does not rise to the level of a constitutional violation warranting federal *habeas corpus* review. The charred body of Kevin Knowlton could not be identified by traditional means; it was burned beyond recognition.

Instead, he was identified because he owned the vehicle in which his burned body was found, because his body had gold chains around its neck, and because LaShelle Braggs testified that Kevin Knowlton was, indeed the victim. Introduction of the photograph into evidence merely let the jury see what the victim looked like before he was burned. The petitioner has not argued why he believes the ordinary photograph of the victim Kevin Knowlton would inflame the jury. As such, the Mississippi Court of Appeals' decision that these claims were without merit is entitled to deference under 28 U.S.C. §2254(e), and the petitioner's claims in Grounds Two and Three shall be dismissed.

## Ground One: Denied on the Merits in State Court

The Mississippi Supreme Court has already considered Ground One on the merits and decided that issue against the petitioner; hence, this claims is barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

claim challenges both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Ground One of the petitioner's claim.

Nevertheless, under § 2254(d)(2) this ground may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move Ground One beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

# Ground One: Improper Closing Arguments

In Ground One, the petitioner claims that the trial court erred when it allowed the district attorney to make a "personal plea" to the jury during closing arguments. The petitioner refers to the following portion of the state's closing:

> And this is what you have left, and that's not good to look at. But, a man just doesn't walk the streets and get his way, and this is his day. This is his day for justice. You know, it really is. You were seated around here. We picked you. Now you are 12 and 3 alternates, and this is our time finally. Don't let him get by with this. Please don't let him get by with this.

S.C.R., Vol. 4, pg. 355.

The Fifth Circuit Court of Appeals has considered the issue of improper comments by a prosecutor during closing argument and has held:

> When the prosecutor's remarks during closing argument are both inappropriate and harmful, a defendant may be entitled to a new trial. *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir.1990), *cert. denied,* 510 U.S. 983, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993). The prosecutor's improper remarks standing alone, however, are insufficient to overturn a criminal conviction. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Rather, the defendant must show that the prosecutor's remarks affected his substantial rights. *Simpson,* 901 F.2d at 1227. "To determine whether the argument affected the defendant's substantial rights, we examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Simpson,* 901 F.2d at 1227; *Lowenberg,* 853 F.2d at 302.

*U.S. v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995). The Mississippi Court of Appeals considered this claim on direct appeal, holding:

> In closing argument, counsel is afforded wide latitude. *Burns v. State*, 729 So.2d 203, 229 (¶ 130) (Miss. 1998). In *Burns*, the court held that the prosecutor did not overstep his bounds in asking the jury to give the defendant what he deserved. *Id*. at 229 (¶131). Likewise, we find the prosecutor here did not overstep his bounds when he asked the jury not to let the defendant get away with the crime with which he was charged.
>
> Furthermore, the trial court instructed the jury that "[a]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the

> law, but are not evidence. If any argument, statement or remark has no basis in
> the evidence, then you should disregard that argument, statement or remark."
> When a jury is properly instructed that statements made by counsel are not
> evidence, reversal is not required. *Id*. Therefore, we find no error.

*Davis v. State*, 904 So.2d at 1216.

The "magnitude of the statement's prejudice" in the instant case is quite small. In addition, any prejudice was minimized by the cautionary instruction given by the trial court. As summarized above, the evidence against the petitioner in this case was absolutely overwhelming. The jury was presented with evidence that Davis was last person to be seen with the victim Kevin Knowlton prior to the discovery of the body. S.C.R., Vol. 2, pg. 78. Davis appeared wet and muddy on the doorstep of a local family and asked for ride to a nearby casino claiming that his car had broken down. S.C.R., Vol. 2, pg. 138. Further, an eyewitness, Lashelle Braggs, testified to the grisly details of the victim's murder – affirming that the petitioner shot him. S.C.R., Vol. 3, pp. 156-191. Also, an apple juice container found at the scene of the murder was identified by the petitioner's fiancé as coming from their home. S.C.R., Vol. 3, pg. 195. She also testified that, before leaving the house the night of the murder, the petitioner had asked her whether she thought the gas station would allow him to fill the container with gasoline. S.C.R., Vol. 3, pg. 196. She also notice that after Davis returned home the night of the murder, he had more money on him. S.C.R., Vol. 3, pg. 196. Further, footprints found at the scene were consistent with those made by Davis' Reebok tennis shoes. S.C.R., Vol. 3, pg. 217. Also, witness Andre Crawford testified that the day after the murder Davis sold Crawford his gun for forty dollars and a small amount of drugs. S.C.R., Vol. 3, pg. 240. This gun matched the description of a gun which several witnesses testified having seen the petitioner with before the murder – but never saw again afterwards. There was also testimony that the petitioner had asked a witness whether

police could identify the gun used to shoot a victim if the victim's body was burned. S.C.R., Vol. 3, pg. 253. The petitioner therefore cannot show that the prosecutor's comments affected his substantial rights as required by *Tomblin, supra*.

Hence, the state court's decision that the petitioner's claim regarding the prosecutor's comments was without merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, DeAndre Davis is not entitled to *habeas corpus* relief in Ground One.

In sum, all of the petitioner's grounds for relief shall be dismissed with prejudice. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 2nd day of July, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE